24 F.3d 250
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Billy Joe ASHE, Defendant-Appellant.
 No. 93-50428.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 5, 1994.
Decided May 5, 1994.
 
 Before: HUG, WIGGINS, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. BACKGROUND
 
 2
 Appellant Billy Joe Ashe ("Ashe") was convicted in January 1993 on three counts of felon in possession of a firearm, in violation of 18 U.S.C. Secs. 922(g)(1) and 924(e). The charges stemmed from three separate incidents, in March, April, and May of 1989, in which Ashe was found to be in possession of three different handguns. The district court sentenced Ashe to a total of 262 months in prison, followed by five years of supervised release. Ashe raises seven issues on appeal. He alleges that the district court erred in (1) denying his motion to dismiss charges because of pre-indictment delay; (2) denying his motion to dismiss for vindictive prosecution; (3) denying his motion to sever the three counts; (4) preventing him from presenting a defense that he was entitled, under Texas law, to possess the three handguns; (5) determining that he qualified as an "armed career criminal;" and (6) imposing a two-level upward departure in his sentence. Additionally, Ashe alleges that he was denied effective assistance of counsel at trial. We find no reversible error in Ashe's trial, decline to address Ashe's ineffective assistance of counsel claim on direct appeal, and affirm the judgment and sentence of the district court.
 
 II. DISCUSSION
 A. Pre-indictment Delay
 
 3
 Ashe contends the district court erred in not granting his motion to dismiss the charges against him for pre-indictment delay. We review a district court's ruling on a motion to dismiss for pre-indictment delay for abuse of discretion. United States v. Huntley, 976 F.2d 1287, 1290 (9th Cir.1992).
 
 
 4
 Statutes of limitations provide the primary guarantee against bringing overly stale criminal charges. United States v. Marion, 404 U.S. 307, 322 (1971) (quoting United States v. Ewell, 383 U.S. 116, 122 (1966)). However, pre-indictment delays may violate a criminal defendant's Fifth Amendment due process rights, even when charges are brought within the relevant statutory time limits. Id. at 324. We have articulated a two-part test to determine if a defendant's due process rights have been violated by delays between arrest and indictment. Huntley, 976 F.2d at 1290. First, the defendant must provide proof of "actual, non-speculative prejudice" resulting from the delay. Id. Courts apply the actual prejudice test stringently. United States v. Butz, 982 F.2d 1378, 1380 (9th Cir.1993). We previously have stated that "[t]he task of establishing the requisite prejudice for a possible due process violation is 'so heavy' that we have found only two cases since 1975 in which any circuit has upheld a due process claim." Huntley, 976 F.2d at 1290. Second, the length of the delay must be balanced against the reason for the delay to determine if "fundamental conceptions of justice" have been offended. Id.
 
 
 5
 Ashe claims that the two-year delay led to the loss of exculpatory witness testimony. To establish a due process claim based on lost testimony or faded witness memory, a defendant "must show that the loss of testimony meaningfully has impaired his ability to defend himself" and "must demonstrate by definite and non-speculative evidence how the loss of a witness ... is prejudicial to the defendant's case." Id. Generally, lost witness testimony will not warrant a finding of a due process violation, but rather "falls solely within the ambit of the statute of limitations." Id. Indeed, we have "questioned whether such lost testimony would ever qualify for the level of prejudice necessary to establish a due process violation...." United States v. Moran, 759 F.2d 777, 782 (9th Cir.1985), cert. denied, 474 U.S. 1102 (1986) (emphasis added) (citing United States v. Pallan, 571 F.2d 497 (9th Cir.), cert. denied, 436 U.S. 911 (1978)).
 
 
 6
 Ashe fails to specify what was lost due to the delay, or how such loss was prejudicial to his defense. The only particular testimony that he points to was that of Betty Begona and Suzy Gushwa, both of whom told police at the time of one of the incidents that Ashe did not possess a gun. However, in order to establish a due process claim based on unavailability of witnesses, a defendant must "establish his inability to locate the witness[es]," United States v. Horowitz, 756 F.2d 1400, 1405 (9th Cir.), cert. denied, 474 U.S. 822 (1985), and demonstrate the efforts he made to locate them. United States v. Kidd, 734 F.2d 409, 413 (9th Cir.1984); United States v. Mills, 641 F.2d 785, 788 (9th Cir.), cert. denied, 454 U.S. 902 (1981). Ashe has failed to do this.
 
 
 7
 Moreover, the testimony that both of these witnesses would have given was cumulative of the testimony of other defense witnesses, who testified that Ashe did not possess a gun on that occasion. The loss of cumulative witness testimony does not establish prejudice. Horowitz, 756 F.2d at 1405.
 
 
 8
 Ashe also claims that the destruction by fire of the premises where the April incident occurred prevented the jury from "reconstructing the actual scene" in order to evaluate the conflicting witness testimony. However, Ashe does not show that the scene could not be reconstructed through diagrams drawn after the building was destroyed. Further, Ashe does not state with specificity what he would have gained had the structure been intact during his trial. Here again, Ashe fails to establish actual prejudice.
 
 
 9
 The district court did not err in finding that Ashe failed to establish that he was prejudiced by the pre-indictment delay.
 
 B. Vindictive Prosecution
 
 10
 Ashe contends that the district court erred in denying his motion to dismiss for vindictive prosecution. The standard of review of a district court's denial of a motion to dismiss for prosecutorial vindictiveness is unsettled in this circuit. United States v. Garza-Juarez, 992 F.2d 896, 903 (9th Cir.1993), cert. denied, 114 S.Ct. 724 (1994). We sometimes have applied "abuse of discretion" or "clearly erroneous" standards, Guam v. Fegurgur, 800 F.2d 1470, 1472 (9th Cir.1986), cert. denied, 480 U.S. 932 (1987), and other times "de novo " review, United States v. Martinez, 785 F.2d 663, 666 (9th Cir.1986). We need not resolve the disparity here, as Ashe's claim fails under each of these standards.
 
 
 11
 Ashe makes two separate claims that his prosecution was motivated by vindictiveness on the part of the Government. First, he argues that the original decision to prosecute him under federal as opposed to state law was motivated by a desire to punish him for filing a civil RICO case in Texas based on violations of his civil rights. This claim is without merit. Ashe raised this argument in the appeal of his first conviction on charges relating to the March, 1989 incident. We found then that Ashe offered no evidence of vindictiveness. In this appeal, Ashe again fails to make any showing to support his claim.
 
 
 12
 Second, Ashe claims that the Government's decision to indict him on the charges relating to the April and May incidents was motivated by a desire to punish Ashe for appealing his first conviction relating to the March incident. This claim must fail as well.
 
 
 13
 The Supreme Court has held that "the Due Process Clause prohibits the prosecution of more serious charges ... against a defendant merely because the defendant has exercised his right to appeal from a conviction." Garza-Juarez, 992 F.2d at 905 (citing Blackledge v. Perry, 417 U.S. 21, 28-29 (1974)). The analysis of such a claim proceeds in two steps. First, a defendant must raise a presumption of vindictiveness by making an "initial showing that charges of increased severity were filed because the accused exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." Id. at 907 (quoting United States v. Gallegos-Curiel, 681 F.2d 1164, 1168 (9th Cir.1982)). Once this presumption is raised, the burden shifts to the prosecution to show that the superseding charges "did not stem from a vindictive motive, or [were] justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness." Id. at 906 (quoting Gallegos-Curiel, 681 F.2d at 1168).
 
 
 14
 Ashe failed to make an initial showing that the charges on the second and third counts were brought in retaliation for Ashe's appealing his first conviction. The incidents that formed the basis for Counts Two and Three occurred at separate times from the conduct charged in the first indictment; the three counts related to Ashe's possession of three separate guns on three separate occasions. The fact that the additional counts arose out of separate, independently chargeable incidents suggests the absence of prosecutorial vindictiveness. See United States v. Robison, 644 F.2d 1270, 1272 (9th Cir.1981) ("In almost every case in which courts have condemned prosecutions as vindictive, the defendant ... had been confronted with a more serious or an additional charge arising out of the same nucleus of operative facts as the original charge.") (emphasis added). See also Adamson v. Ricketts, 865 F.2d 1011, 1017-18 (9th Cir.1988) (en banc ) (presumption of vindictiveness raised when, inter alia, the additional charges are based on the same conduct as the initial indictment), cert. denied, 497 U.S. 1031 (1990); Martinez, 785 F.2d at 669 (if additional charges arise out of the same operative facts as original charge, a presumption of vindictiveness is raised).
 
 
 15
 Additionally, the filing of the additional charges occurred almost two years after Ashe filed his appeal from the first conviction. Such a lengthy delay between Ashe's appeal and the Government's obtaining the additional indictments further suggests that vindictiveness did not motivate the Government's actions. See Garza-Juarez, 992 F.2d at 907 (citing Ricketts, 865 F.2d at 1018) (presumption of vindictiveness supported when the filing of additional charges "directly followed the assertion of a procedural right").
 
 
 16
 Indeed, the Government's decision to bring the additional charges appears to have been in reaction to Ashe's rejection of the Government's plea bargain offer, made shortly before Ashe's appeal was to be heard. These circumstances do not support a finding of vindictive prosecution. See id. (no vindictive prosecution where Government's decision to seek additional charges "may have been based solely on the rejection of [a] plea bargain" and "the additional charges were not linked exclusively" to the defendant's assertion of his procedural rights); United States v. Heldt, 745 F.2d 1275, 1280 (9th Cir.1984) ("[B]ringing additional charges because the defendant was not willing to plea bargain was permissible prosecutorial discretion.").
 
 
 17
 Even had Ashe succeeded in raising a presumption of vindictiveness, the district court was correct to conclude that the Government presented evidence sufficient to rebut any such presumption. The court found that the Government adequately explained the delay as resulting from confusion and miscommunication among the federal prosecutors working on the case. The Government's reasons were sufficient to rebut a presumption of vindictiveness. See Garza-Juarez, 992 F.2d at 907 (prosecutor's representation, that the delay in bringing additional charges was due to a failure of communication among federal investigators and attorneys, was "sufficient evidence to rebut the presumption of vindictiveness"). We find no error in the district court's denial of Ashe's motion to dismiss for vindictive prosecution.
 
 C. Severance of Counts
 
 18
 Ashe claims that the district court erred in denying his motion to sever the three counts charged against him. We review the denial of a motion to sever counts pursuant to Federal Rule of Criminal Procedure 14 for abuse of discretion. United States v. Cuozzo, 962 F.2d 945, 949 (9th Cir.), cert. denied, 113 S.Ct. 475 (1992). The party seeking reversal of the denial of a motion to sever bears the burden of proving that a joint trial causes such clear, manifest or undue prejudice that the accused is denied a fair trial. Id. at 950.
 
 
 19
 Joinder of two or more offenses is proper when the offenses are of the same or similar character. Fed.R.Crim.P. 8(a). Ashe does not claim that the offenses were improperly joined. Offenses that are properly joined may be severed pursuant to Rule 14 if their joinder is prejudicial to either party.
 
 
 20
 The district court did not abuse its discretion when it determined that a joint trial including all counts would not prejudice Ashe's defense. Ashe's stated reason for seeking the severance was that he wished to present a self-defense justification for possessing the gun during the March incident charged in Count One. However, as the Government, the court, and Ashe's counsel pointed out at trial, such an endeavor likely would have allowed the Government to introduce evidence of the other two incidents to show the unlikelihood that Ashe was compelled to defend himself with deadly force on three separate occasions. See United States v. Pirovolos, 844 F.2d 415, 422-23 (7th Cir.), cert. denied, 488 U.S. 857 (1988) (two other incidents of a defendant possessing a gun at his restaurant admissible when defendant claimed possession was in self-defense).
 
 
 21
 If evidence of the other two incidents would be allowed as rebuttal to Ashe's self-defense testimony, then Ashe was not prejudiced by the joinder of the three counts. There was no error in the district court's decision to deny Ashe's motion to sever.
 
 D. Restoration of Ashe's Civil Rights
 
 22
 Ashe argues that the district court erred in not allowing him to present evidence that he was entitled, under Texas law, to carry the weapons that he possessed, and in not instructing the jury on that defense. We review the district court's decision to exclude evidence based on an improper defense for abuse of discretion. United States v. Mullins, 992 F.2d 1472, 1476 (9th Cir.), cert denied, 113 S.Ct. 2997 (1993). We have not resolved the issue of whether the district court's denial of a proposed jury instruction is reviewed de novo or for abuse of discretion. United States v. Streit, 962 F.2d 894, 897 9th Cir.), cert. denied, 113 S.Ct. 431 (1992). Compare United States v. Wagner, 834 F.2d 1474, 1486 (9th Cir.1987) (applying de novo review) with United States v. Busby, 780 F.2d 804, 806 (9th Cir.1986) (applying abuse of discretion standard). However, Ashe's claim fails under either standard.
 
 
 23
 A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is "supported by law and has some foundation in evidence." United States v. Gomez-Osorio, 957 F.2d 636, 642 (9th Cir.1992).
 
 
 24
 Ashe was convicted under 18 U.S.C. Sec. 922(g)(1), which prohibits the possession of a firearm by any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year." Section 921(a)(20) provides that what constitutes a qualifying conviction shall be determined "in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. Sec. 921(a)(20). However, a conviction will not qualify as a basis for section 922(g)(1) liability if, under the law of the jurisdiction in which the conviction occurred, the "conviction ... has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored." Id.; United States v. Dahms, 938 F.2d 131, 133 (9th Cir.1991).
 
 
 25
 Ashe contends that, because Texas law allows convicted felons a limited right to possess handguns in their homes, his civil rights have been restored within the meaning of section 921(a)(20). However, the limited restoration of Ashe's right to possess a gun in Texas is not tantamount to a restoration of civil rights within the meaning of the statute. In Dahms, we provided guidelines for determining when a felon's civil rights have been restored within the meaning of section 921(a)(20): "[A] convicted felon who, having first lost them upon conviction, regains the right to vote, to sit on a jury and to hold public office in the state in which he was originally convicted has had his civil rights substantially restored under Sec. 922(a)(20)." Dahms, 938 F.2d at 133.
 
 
 26
 Ashe does not contend that he enjoys any of these rights under Texas law, and his limited ability to possess a gun in Texas is irrelevant to the determination of whether his civil rights were restored within the meaning of section 921(a)(20). The district court did not err when it prevented Ashe from presenting his "Texas law" defense.
 
 E. "Armed Career Criminal" Status
 
 27
 Ashe challenges the district court's determination that he qualified as an "armed career criminal" within the meaning of 18 U.S.C. Sec. 924(e)(1). We review the district court's interpretation and application of the Armed Career Criminal Act de novo. United States v. Chatman, 869 F.2d 525, 527 (9th Cir.1989).
 
 
 28
 A defendant qualifies as an "armed career criminal" under 18 U.S.C. Sec. 924(e)(1) if he has suffered three prior violent felony convictions or convictions for serious drug offenses, as these terms are defined in 18 U.S.C. Sec. 924(e)(2). The district court found Ashe to be an armed career criminal based on his convictions in Texas for burglary, robbery, murder, and possession with intent to deliver methamphetamine. Ashe argues that none of these convictions can serve as predicates for liability under section 924(e).
 
 
 29
 The convictions that serve as the basis for section 924(e) liability are entitled to a presumption of regularity, and Ashe bears the burden of demonstrating that these prior convictions are constitutionally defective. Parke v. Raley, 113 S.Ct. 517, 525-26 (1992); United States v. Mulloy, 3 F.3d 1337, 1339 (9th Cir.1993). Because Ashe fails to establish that any of his predicate convictions are constitutionally infirm, we conclude that the district court did not err in determining that Ashe qualified as an "armed career criminal."
 
 1. The Burglary Conviction
 
 30
 An offense constitutes "burglary" for purposes of a section 924(e) sentence enhancement if its statutory definition "substantially corresponds to 'generic' burglary." Taylor v. United States, 495 U.S. 575, 602 (1990). Ashe was convicted in Texas for burglary under Texas Penal Code Sec. 30.02, but argues that his conviction cannot qualify because the statutory definition of "burglary" under the Texas statute does not require a finding of specific intent to commit a crime before entering a building, and such a finding is necessary for a "generic" burglary offense.
 
 
 31
 We recently held that the burglary statute under which Ashe was convicted "substantially corresponds to 'generic' burglary," and thus a conviction under this statute qualifies for liability under section 924(e). United States v. Canon, 993 F.2d 1439, 1441 (9th Cir.1993) (citing Taylor, 495 U.S. at 598). Ashe's burglary conviction qualified as a predicate felony under section 924(e).
 
 2. The Robbery Conviction
 
 32
 Ashe contends that his conviction on robbery charges cannot qualify under section 924(e) because the information to which he pleaded guilty did not include a requisite element of the offense, namely, that the robber committed the act without the effective consent of the owner of the property.
 
 
 33
 The failure of an indictment to state a particular element of an offense is harmless and does not warrant invalidation if such failure does not prejudice the defendant. United States v. James, 980 F.2d 1314, 1319 (9th Cir.1992). When the sufficiency of an indictment is challenged after trial, "it is only required that the necessary facts appear in any form or by fair construction can be found within the terms of the indictment." Id. at 1317 (internal quotations omitted).
 
 
 34
 Ashe's information charged, in relevant part, that Ashe "did unlawfully assault [the complainant] ... and did by the assault, by violence and by putting the complainant in fear of life and bodily injury, fraudulently and against the complainant's will take from the person and possession of the complainant money owned by the complainant....". The only conclusion consistent with a fair construction of these terms is that the taking of the money "by the assault," "by violence," and by putting the owner "in fear of life and bodily injury" constituted a taking without the effective consent of the owner.
 
 
 35
 The failure of the indictment specifically to allege that Ashe took the property without the effective consent of the owner was harmless. Ashe's robbery conviction qualifies as a predicate felony for section 924(e) liability.
 
 3. The Murder Conviction
 
 36
 Ashe argues that his murder conviction cannot qualify under section 924(e) because his guilty plea to the murder charge was coerced. The murder took place in the jail where Ashe was being held on the above-mentioned robbery charges. The alleged coercion consisted of the District Attorney's offer to grant concurrent five-year sentences for both the murder and robbery, in exchange for guilty pleas on both charges. Ashe's argument is that the offer was so good, and the burden on him to accept it so great, that he effectively was denied his right to a trial on the murder charge.
 
 
 37
 "[T]here are undoubtedly constitutional limits on [the] exercise" of a prosecutor's discretion to offer plea bargains. Bordenkircher v. Hayes, 434 U.S. 357, 365 (1978). However, a prosecutor who "no more than openly present[s] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution," has not committed any constitutional violation. Id. The prosecutor's conduct in Ashe's murder case amounted to no more than presenting Ashe with an opportunity to forgo trial on murder charges in exchange for a guilty plea. There is no constitutional violation in making such an offer. Ashe's murder conviction qualifies as a predicate felony under section 924(e).
 
 4. The Methamphetamine Conviction
 
 38
 In order to qualify as a predicate felony under section 924(e), a state-law drug offense must be an offense "for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. Sec. 924(e)(2)(A). Ashe does not contest the validity of his methamphetamine conviction in Texas. Rather, he claims that, because the document charging the offense does not specify the statute under which Ashe was convicted, the court cannot know whether the conviction qualifies under section 924(e).
 
 
 39
 The district court found that Ashe's methamphetamine conviction had to have been under one of three statutes, Texas Controlled Substance Act Secs. 4.01(b)(1), (2) or (3). The court further found that, under each of these provisions, the maximum sentence would have been at least 10 years. Upon this finding, the court determined that the methamphetamine conviction qualified as a predicate felony under section 924(e).
 
 
 40
 Ashe makes no showing that his methamphetamine conviction could have been under any statute other than the three mentioned above. The methamphetamine conviction qualifies as a predicate felony under section 924(e).
 
 5. Restoration of Civil Rights
 
 41
 Ashe argues that none of the Texas convictions can be used to find liability under section 924(e) because his civil rights have been restored under Texas law. Because we have concluded that Ashe has not had his civil rights restored under Texas law, his argument is without merit.
 
 F. Upward Sentencing Departure
 
 42
 The district court imposed a two-level upward departure on Ashe's sentence, upon finding that he had obstructed justice during his trial by committing perjury on the witness stand. Ashe contends that court erred in making this finding. We review for clear error the factual findings upon which a district court bases a sentencing departure. United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc ).
 
 
 43
 The mere fact that a defendant who testifies at trial is convicted is not a sufficient basis for a finding that the defendant committed perjury. United States v. Dunnigan, 113 S.Ct. 1111, 1117-18 (1993). Rather, the district court must "review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice...." Id. at 1117.
 
 
 44
 The district court made specific independent findings upon which it based its determination that Ashe perjured himself on the witness stand. The court's determination that Ashe committed perjury, and thereby obstructed justice, is not clearly erroneous. The court therefore was within its discretion in imposing the two-level upward departure in Ashe's sentence.
 
 G. Ineffective Assistance of Counsel
 
 45
 We repeatedly have held that the proper avenue for pursuing a claim of ineffective assistance of counsel is in collateral proceedings rather than on direct appeal. See, e.g., United States v. Houtchens, 926 F.2d 824, 828 (9th Cir.1991); United States v. Rewald, 889 F.2d 836, 859 (9th Cir.1989), as amended, 902 F.2d 18 (9th Cir.), cert. denied, 498 U.S. 819 (1990). The rationale for this rule is that "such a claim cannot be advanced without the development of facts outside the original record." United States v. Birges, 723 F.2d 666, 670 (9th Cir.), cert. denied, 466 U.S. 943 (1984). Accordingly, we decline to consider Ashe's ineffective assistance of counsel claim.
 
 III. CONCLUSION
 
 46
 We find that the trial court committed no reversible error in Ashe's trial. We decline to consider his ineffective assistance of counsel claim.
 
 
 47
 The judgment and sentence of the district court are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3