24 F.3d 252
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Oscar WILLIAMS, Jr., Petitioner/Appellant,
v.
Salvador GODINEZ, et al., Respondent/Appellee.
 No. 93-15619.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 12, 1994.*
Decided May 13, 1994.
 
 1
 Before: NORRIS, SKOPIL, and O'SCANNLAIN, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Oscar Williams appeals the district court's denial of his petition for a writ of habeas corpus. A thorough review of the record leads us to conclude that any errors that occurred did not result in an unfair trial or in a miscarriage of justice. See Brecht v. Abrahamson, 113 S.Ct. 1710, 1719-20 (1993). We therefore affirm the district court's denial of the petition.
 
 
 4
 1. Rearrest After Grant of Pretrial Habeas Writ
 
 
 5
 Williams contends that the state's alleged failure to comply with state law in recharging him subsequent to his release on a pretrial habeas writ violated his right to due process. In the absence of prosecutorial bad faith, however, recharging a defendant after charges have once been dismissed is well within the bounds of due process. See United States v. Horowitz, 756 F.2d 1400, 1404 n. 3 (9th Cir.), cert. denied, 476 U.S. 822 (1985). Williams cites no authority for the proposition that due process requires additional procedures when the original dismissal is pursuant to a pretrial habeas writ, nor does he explain how the alleged failure to follow required procedures was unfair in his case.
 
 
 6
 Williams also argues that the state's alleged failure to comply with Nevada law deprived him of equal protection. To prevail on a claim that the state violated equal protection in misapplying a facially neutral law, a party must show both that others are in fact systematically treated differently, and that the state acted with discriminatory intent. See McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir.1991). Williams has shown neither.
 
 
 7
 Finally, Williams argues that the federal district court was required to give res judicata effect to the state court's dismissal of the first complaint. However, the state trial court ruled that recharging Williams without appealing the dismissal obtaining leave of the first trial court was permissible. Any preclusive effect that should have been given to the first court's dismissal of charges is a matter of state law not reviewable on a federal habeas petition. See Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.1991).
 
 2. Admission of Illegally Obtained Evidence
 
 8
 Williams argues that his first arrest violated his Fourth Amendment right to be free of unreasonable searches and seizures, and that evidence obtained by virtue of that arrest should have been suppressed. Such claims are not cognizable in habeas proceedings in the absence of a showing that the state court did not afford the petitioner an opportunity for full and fair litigation of the issue. Woolery v. Arave, 8 F.3d 1325, 1326-27 (9th Cir.1993), cert. denied, No. 93-8277, 1994 WL 100788 (U.S. Apr. 25, 1994); Terrovona v. Kincheloe, 912 F.2d 1176, 1177-78 (9th Cir.1990), cert. denied, 499 U.S. 979 (1991). Williams appears to have had the opportunity to litigate this claim both through his motion to suppress the evidence prior to trial and at his postconviction evidentiary hearing. He does not contend otherwise. This claim is therefore precluded.
 
 3. Suggestive Procedures at Photo Line-Ups
 
 9
 Williams contends that Priesing's trial testimony identifying him as the man who fled the scene of the crime was tainted by impermissibly suggestive police procedures at intervening photo line-ups. See United States v. Bagley, 772 F.2d 482, 492 (9th Cir.1985), cert. denied, 475 U.S. 1023 (1986). Williams has failed to establish that any suggestive procedures were used.
 
 
 10
 First, Williams alleges that his photo was included in two photo line-ups prior to the one at which Priesing identified him. This allegation is wholly unsupported by the record. Second, Williams argues that an officer's statement that the suspect "may possibly be in the photographs" was impermissibly suggestive. A witness would naturally assume that a suspect may possibly be in the photographs, however, and thus this comment was not unduly suggestive.
 
 
 11
 Finally, Williams alleges that Priesing was shown a photo of him prior to Priesing's positive identification. This conjecture was countered by the testimony of both Priesing and the police officers involved. The Nevada district court found that the police did not show Priesing a photograph prior to his positive identification. As this finding is not clearly erroneous, we will not overturn it. See Jeffries v. Blodgett, 5 F.3d 1180, 1187 (9th Cir.1993) (internal citations omitted), cert. denied, 114 S.Ct. 1294 (1994).
 
 
 12
 In the absence of suggestive police procedures at an intervening identification, the factors relied on by Williams to show that Priesing's testimony was unreliable go to the weight given the testimony by the jury, rather than to its admissibility. "If we find that a challenged procedure is not impermissibly suggestive, our inquiry into the due process claim ends." Bagley, 772 F.2d at 492. Williams has failed to show that the police employed suggestive procedures, and accordingly, the admission of Priesing's testimony did not violate due process.
 
 4. Admission of the Tape Recordings
 
 13
 Williams' contentions that the admission of tape recordings of his conversations with witnesses Smith and Normand violated his statutory and constitutional rights are meritless. The tapes were not made in violation of the federal wiretapping statutes, as the conversations were taped with the consent of Smith and Normand, who were parties to the conversations. See 18 U.S.C. Sec. 2511(2)(c)-(d). Furthermore, the taping of a conversation by a government agent who is a party to the conversation does not implicate the Fourth Amendment right to be free of unreasonable searches and seizures. See United States v. White, 401 U.S. 745, 749-51 (1971).
 
 
 14
 The Fifth Amendment privilege against self-incrimination is implicated only "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444 (1966). That government agents question a defendant after he becomes the primary suspect and is under police surveillance is irrelevant. See United States v. Woods, 720 F.2d 1022, 1030 (9th Cir.1983). In the absence of some compulsion on the part of government agents, a defendant has not been compelled to testify against himself. Hoffa v. United States, 385 U.S. 293, 304 (1966). Williams has alleged no such compulsion.
 
 
 15
 The Sixth Amendment right to counsel applies only after judicial proceedings have been initiated. United States v. Pace, 833 F.2d 1307, 1310 (9th Cir.1987), cert. denied, 486 U.S. 1011 (1988). Williams was not protected by the Sixth Amendment right to counsel after the initial charges against him were dismissed and before he was recharged. See United States v. DeVaughn, 541 F.2d 808, 809-10 (9th Cir.), cert. denied, 429 U.S. 984 (1976). That Williams' lawyer had demanded that the state refrain from questioning Williams in his lawyer's absence does not compel a different conclusion. See United States v. Kenny, 645 F.2d 1323, 1338 (9th Cir.), cert. denied, 452 U.S. 920 (1981).
 
 
 16
 Finally, Williams contends that the tapes were too unintelligible to be probative, and that their admission violated his right to due process. The erroneous admission of evidence violates the due process clause if "the evidence so fatally infected the proceedings as to render them fundamentally unfair." Jammal, 926 F.2d at 919. In this case, parties to the taped conversations testified at trial, and the jury was not given a transcript of the tape that may have been erroneous. These safeguards ensure that the jury is not misled by unintelligible portions of a recording. See, e.g., United States v. Mittleider, 835 F.2d 769, 773 (10th Cir.1987), cert. denied, 485 U.S. 980 (1988). Under these circumstances, the fact that parts of the tapes were unintelligible did not render the trial fundamentally unfair.
 
 5. Prosecutorial Misconduct
 
 17
 Williams argues that the prosecutor's improper arguments violated his right to due process. Although we agree that the prosecutor's arguments were improper, "[i]mproper argument does not, per se, violate a defendant's constitutional rights." Jeffries, 5 F.3d at 1191. "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotations omitted). We have reviewed the trial transcripts and conclude that these remarks did not render the trial unfair.
 
 6. Ineffective Assistance of Counsel
 
 18
 Williams claims that his counsel was ineffective for four reasons. The first alleged error is that counsel failed to investigate a witness who would have provided exculpatory testimony.
 
 
 19
 [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.... [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
 
 
 20
 Strickland v. Washington, 466 U.S. 668, 690-91 (1984). Weiscopf was one of more than one hundred possible witnesses listed by the prosecution. According to defense counsel, Weiscopf "seemed like a very innocuous witness." She saw the assailant only from the back, in the dark, and from a distance of approximately 125 feet. Two other witnesses who had seen the assailant at a closer range and who also knew Williams by sight testified that they were unable to identify the assailant as Williams. The decision not to interview Weiscopf was not outside the bounds of professional judgment.
 
 
 21
 Williams' contention that defense counsel failed to use damaging information to impeach witnesses Smith and Normand is not supported by the record. Counsel questioned the witnesses about the money that they had hoped to receive from the insurance company, the money that they were expecting from the Secret Witness program, and Normand's work for the DEA. Counsel's strategy in cross-examining these witnesses was clearly within "the wide range of professionally competent assistance." Id. at 690.
 
 
 22
 The third alleged error is that counsel failed to object to the admission of evidence regarding Williams' statement made at the police station subsequent to his allegedly illegal arrest. In Kimmelman v. Morrison, 477 U.S. 365 (1986), the Supreme Court addressed claims of ineffective assistance of counsel based on failures to object to the admission of illegally obtained evidence:
 
 
 23
 Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim [of ineffective assistance of counsel], a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ....
 
 
 24
 Id. at 382.
 
 
 25
 Here, defense counsel filed a motion to suppress the evidence. The motion was argued on other grounds, including the ground that the admission was obtained after Williams had asserted his right to have counsel present. A decision to limit a motion to the grounds that counsel believes have the best chance of success is within the range of competent assistance. See Butcher v. Marquez, 758 F.2d 373, 378 (9th Cir.1985).
 
 
 26
 Finally, Williams contends that his counsel's assistance was ineffective because counsel failed to object to statements made by the prosecutor in closing argument. Failure to object to improper argument is generally considered within the bounds of appropriate trial strategy. Only in the case of egregious misstatements by prosecutors will a failure to object be considered ineffective assistance of counsel. United States v. Necoechea, 986 F.2d 1273, 1281 (9th Cir.1993). The statements that Williams complains of do not meet this standard. Moreover, we cannot conclude that this error "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.
 
 7. Erroneous Jury Instructions
 
 27
 A petitioner is not entitled to habeas relief due to an erroneous jury instruction "unless 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " Walker v. Endell, 850 F.2d 470, 475-76 (9th Cir.1987) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)), cert. denied, 488 U.S. 926 (1988). None of the alleged errors were of this magnitude.
 
 
 28
 8. Variance Between the Information and the Evidence at Trial
 
 
 29
 Williams contends that the evidence admitted at trial allowed the state to proceed both on the theory that Williams himself shot his wife, and that he paid someone else to do it. Williams was charged only with the former.
 
 
 30
 Although much of the evidence could have supported the theory that Williams hired someone to kill his wife, all of the evidence was also probative of the theory that Williams committed the murder himself. Evidence does not vary from the information simply because it could be used to prove some theory other than the one alleged and argued at trial. See United States v. Mastelotto, 717 F.2d 1238, 1246 (9th Cir.1983) (evidence need not exclude all hypotheses other than the one alleged). The evidence did not present an impermissible variance.
 
 
 31
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3